TORKILDSON, KATZ, FONSECA,
MOORE & HETHERINGTON,
Attorneys at Law, A Law Corporation

JEFFREY S. HARRIS          2718-0
ROMAN F. AMAGUIN          6610-0
700 Bishop Street, 15th Floor
Honolulu, HI  96813-4187
Telephone:  (808) 523-6000
Facsimile:  (808) 523-6001

Attorneys for Counterclaim Defendant
HICKAM FEDERAL CREDIT UNION

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HICKAM FEDERAL CREDIT UNION, <br><br> Plaintiff & <br> Counterclaim Defendant, <br><br> vs. <br><br> CUMIS INSURANCE SOCIETY, INC., <br><br> Defendant & <br> Third-Party Plaintiff, <br><br> vs. <br><br> DANIEL KEOMALU, <br><br> Third-Party Defendant & <br> Counterclaim Plaintiff. | CIVIL NO.  04-00511 JMS BMK <br> CIVIL NO. 05-00510 JMS BMK <br><br> NOTICE OF HEARING ON MOTION; COUNTERCLAIM DEFENDANT HICKAM FEDERAL CREDIT UNION'S MOTION TO STRIKE AND/OR DISMISS THIRD-PARTY DEFENDANT AND COUNTERCLAIM PLAINTIFF DANIEL KEOMALU'S COUNTERCLAIM FILED OCTOBER 28, 2005; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF COUNSEL; EXHIBIT "A"; CERTIFICATE OF SERVICE <br><br> **[caption continued on next page]** |



EXHIBIT A

|  | Hearing |  |
|---|---|---|
|  | Date: | _____ |
|  | Time: | _____ |
|  | Judge: | Hon. Barry M. Kurren |

## NOTICE OF HEARING ON MOTION

TO:   MICHAEL R. DAVISSON, ESQ.
MARIA COUSINEAU, ESQ.
801 South Figueroa Street, 18th Floor
Los Angeles, CA 90017

Attorney for Defendant and Third-Party Plaintiff
CUMIS INSURANCE SOCIETY, INC.


GREGORY W. KUGLE, ESQ.
1001 Bishop Street
1600 Pauahi Tower
Honolulu, HI 96813

Co-Counsel for Defendant and Third-Party Plaintiff
CUMIS INSURANCE SOCIETY, INC.


R. STEVEN GESHELL, ESQ.
6600 Kalanianaole Highway, Ste. 116
Honolulu, HI 96825

Attorney for Third-Party Defendant and Counterclaim Plaintiff
DANIEL KEOMALU

DUANE R. MIYASHIRO, ESQ.
American Savings Bank Tower
1001 Bishop Street, Ste. 2200
Honolulu, HI 96813

Attorney for Plaintiff
HICKAM FEDERAL CREDIT UNION

PLEASE TAKE NOTICE that COUNTERCLAIM DEFENDANT

HICKAM FEDERAL CREDIT UNION'S MOTION TO STRIKE AND/OR

DISMISS THIRD-PARTY DEFENDANT AND COUNTERCLAIM PLAINTIFF

DANIEL KEOMALU'S COUNTERCLAIM FILED OCTOBER 28, 2005 will be

heard before the Honorable Barry M. Kurren, in his courtroom in the United States

Courthouse, PJKK Federal Building, 300 Ala Moana Boulevard, Honolulu,

Hawai`i, on _____ at _____ ____.m., or as soon thereafter as

counsel may be heard.

DATED:  Honolulu, Hawaii, _____.

TORKILDSON, KATZ, FONSECA,
MOORE & HETHERINGTON,
Attorneys at Law, A Law Corporation

_____

JEFFREY S. HARRIS
ROMAN F. AMAGUIN
Attorneys for Counterclaim Defendant
HICKAM FEDERAL CREDIT UNION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HICKAM FEDERAL CREDIT UNION,<br><br>    Plaintiff &<br>    Counterclaim Defendant,<br><br>  vs.<br><br>CUMIS INSURANCE SOCIETY, INC.,<br><br>    Defendant &<br>    Third-Party Plaintiff,<br><br>  vs.<br><br>DANIEL KEOMALU,<br><br>    Third-Party Defendant &<br>    Counterclaim Plaintiff. | CIVIL NO.  04-00511 JMS BMK<br>CIVIL NO. 05-00510 JMS BMK<br><br>COUNTERCLAIM DEFENDANT HICKAM FEDERAL CREDIT UNION'S MOTION TO STRIKE AND/OR DISMISS THIRD-PARTY DEFENDANT AND COUNTERCLAIM PLAINTIFF DANIEL KEOMALU'S COUNTERCLAIM FILED OCTOBER 28, 2005 |

**COUNTERCLAIM DEFENDANT HICKAM FEDERAL
CREDIT UNION'S MOTION TO STRIKE AND/OR DISMISS
THIRD-PARTY DEFENDANT AND COUNTERCLAIM PLAINTIFF
DANIEL KEOMALU'S COUNTERCLAIM FILED OCTOBER 28, 2005**

Counterclaim Defendant Hickam Federal Credit Union (hereinafter referred to as "HFCU"), by and through its counsel, hereby moves the Honorable Court to strike and/or dismiss Third-Party Defendant and Counterclaim Plaintiff Daniel Keomalu's Counterclaim, filed October 28, 2005.

This motion is brought pursuant to Rules 7, 16(f), 37(b)(2), and 41(b) of the Federal Rules of Civil Procedure and Rules 7.1 and 7.2 of the local rules, and is based on the attached memorandum and declaration in support of motion, the records and files in this case, and other such reasons which may arise.

DATED:  Honolulu, Hawaii, _____.

TORKILDSON, KATZ, FONSECA, MOORE & HETHERINGTON, Attorneys at Law, A Law Corporation


_____
JEFFREY S. HARRIS
ROMAN F. AMAGUIN
Attorneys for Counterclaim Defendant
HICKAM FEDERAL CREDIT UNION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HICKAM FEDERAL CREDIT UNION,<br><br>    Plaintiff &<br>    Counterclaim Defendant,<br><br>  vs.<br><br>CUMIS INSURANCE SOCIETY, INC.,<br><br>    Defendant &<br>    Third-Party Plaintiff,<br><br>  vs.<br><br>DANIEL KEOMALU,<br><br>    Third-Party Defendant &<br>    Counterclaim Plaintiff. | CIVIL NO.  04-00511 JMS BMK<br>CIVIL NO. 05-00510 JMS BMK<br><br>MEMORANDUM IN SUPPORT OF MOTION |

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

HFCU asks that Third-Party Defendant and Counterclaim Plaintiff Daniel Keomalu's ("Keomalu") counterclaim be stricken and/or dismissed.

The Court's November 18, 2004 Scheduling Order set an April 8, 2005 deadline for joining or adding parties and for the amendment of pleadings.  The Scheduling Order also set an August 10, 2005 deadline for the filing of non-

dispositive motions.

On July 12, 2005, Keomalu filed his answer to a Third-Party Complaint filed against him by Cumis Insurance Society ("CUMIS"). Subsequently, on October 28, 2005, Keomalu filed an untimely counterclaim against HFCU without first moving to amend the Scheduling Order and seeking leave to amend his answer.

Keomalu violated the Scheduling Order and therefore his counterclaim should be stricken and/or dismissed pursuant to Fed. R. Civ. P. 16, 37(b)(2)(C), and 41(b).

## II.    FACTS

1.    On November 18, 2004, the Court filed its Scheduling Order in Civil No. 04-00511 JMS/BMK. *See* Scheduling Order filed November 18, 2004.

2.    The November 18, 2004 Scheduling Order set an April 8, 2005 deadline for joining or adding parties and for the amendment of pleadings. Id.

3.    The Scheduling Order also set an August 10, 2005 deadline for the filing of non-dispositive motions. Id.

4.    On April 8, 2005, CUMIS filed a "Third-Party Complaint against Daniel Keomalu." *See* "Third-Party Complaint against Daniel Keomalu" filed by CUMIS on April 8, 2005.

5.    The Third-Party Complaint was served on Keomalu on May 19, 2005. *See* "Acceptance and Acknowledgment of Service of Third-party Complaint on

behalf of third-party defendant Daniel Kemoalu" filed on May 26, 2005.

6.    Keomalu answered the Third-Party Complaint on July 12, 2005. *See* Keomalu's "Answer to Third Party Complaint" filed on July 12, 2005.

7.    On October 28, 2005, Keomalu filed a "Counterclaim against Hickam Federal Credit Union" and alleged that it "arises out of the transaction or occurrence that is the subject matter of Hickam's claim against CUMIS." *See* "Counterclaim against Hickam Federal Credit Union" filed on October 28, 2005 at ¶5.

8.    Keomalu failed to assert the counterclaim in his answer to the Third-party Complaint, which he filed on July 12, 2005. Keomalu also failed to move the Court to amend the Scheduling Order, a prerequisite to seeking leave to amend his answer. *See* "Counterclaim against Hickam Federal Credit Union" filed on October 28, 2005; Decl. of Counsel.

9.    The counterclaim alleges that HFCU informed Keomalu that he would be "terminated from his position as Vice President of Loans effective June 27, 2003." Counterclaim at ¶13.

10.    The counterclaim asserts that HFCU is liable in common law for terminating Keomalu "in violation of the . . . .clear mandates of public policy" and that the termination violates Hawai'i's Whistleblower's Protection Act, HRS §378-62. Counterclaim at ¶¶12-20.

11.    Both the common law public policy claim and the claim that HFCU

violated HRS §378-62 are identical to claims Keomalu asserted in a lawsuit filed in

the Circuit Court of the First Circuit, State of Hawai'i.  Decl. of Counsel ¶¶4-5.

12.    On April 21, 2004, Keomalu filed a state court action, <u>Daniel T.</u>

<u>Keomalu v. Hickam Federal Credit Union</u>; et al., Civil No. 04-1-0732-04 (EEH).

Decl. of Counsel ¶¶4-5.

13.    On December 29, 2004, the Honorable Judge Hifo granted summary

judgment on Keomalu's public policy tort claim and on November 30, 2005,

denied Keomalu's motion to reconsider the granting of summary judgment.  Decl.

of Counsel ¶7.

14.    A jury trial on the remaining primary claims, Keomalu's

whistleblower claim under HRS §378-62 and a defamation claim commenced on

February 6, 2006.  Decl. of Counsel ¶8.

15.    The jury trial ended on February 13, 2006 when the Honorable Judge

Hifo issued a directed verdict in favor of HFCU and against Keomalu on both

claims.  Decl. of Counsel ¶¶8-9, Exhibit "A."

## III.    ARGUMENT

### A.    KEOMALU'S OCTOBER 28, 2005 COUNTERCLAIM VIOLATED THE SCHEDULING ORDER AND FED. R. CIV. P. 16

Rule 16(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

provides that the Court "shall after receiving the report from the parties under Rule

26(f) . . . enter a scheduling order" and that it "shall not be modified except upon a showing of <u>good cause and by leave of the district judge</u>. . . ." Fed. R. Civ. P. 16(b) (emphasis supplied); *see* <u>Johnson v. Mammoth Recreations</u>, 975 F.2d 604, 607-08 (9th Cir. 1992).

Rule 16 is designed to allow the district court to manage its calendar and to facilitate more efficient disposition of cases. <u>Johnson</u>, 975 F.2d at 610. To permit a party to disregard a Rule 16 order "undermine[s] the court's ability to control its docket, disrupt[s] the agreed-upon course of the litigation, and reward[s] the indolent and the cavalier." <u>Johnson</u>, 975 F.2d at 610.

Upon the expiration of the relevant deadline established in a Rule 16 Scheduling Order, a party seeking to amend the expired deadline must satisfy the standards of Rule 16 before the amendment will be allowed. <u>Id</u>. at 607-608, 610 ("Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15."). Thus, the party that seeks amendment of the Scheduling Order in order to change the expired deadline must satisfy Rule 16's "good cause" standard. <u>Id</u>.; *see* Fed. R. Civ. P. 16 (b)("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge.").

On November 18, 2004, the Court filed its Scheduling Order in the instant case. The November 18, 2004 Scheduling Order set an April 8, 2005 deadline for

joining or adding parties and for the amendment of pleadings. The Scheduling Order also set an August 10, 2005 deadline for the filing of non-dispositive motions.

On July 12, 2005, Keomalu answered a Third-Party Complaint filed against him by CUMIS. Keomalu failed to assert his counterclaim as part of his answer. *See* Fed. R. Civ. P. 13(a)("A pleading shall state as a counterclaim any claim which at the time of serving of the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

On October 28, 2005, Keomalu filed an untimely counterclaim against HFCU without filing a motion seeking to amend the Scheduling Order and also a motion for leave to amend his counterclaim. Thus, Keomalu violated the Court's Scheduling Order and Fed. R. Civ. P. 16. *See* <u>Doe v. State of Hawai`i</u>, 351 F.Supp.2d 998, 1009 (D.Haw. 2004)("Plaintiffs must not only file a motion to amend their First Amended Complaint, but also file a motion to modify the . . . Rule 16 Scheduling Order.").

**B.    THE COURT SHOULD STRIKE AND/OR DISMISS KEOMALU'S COUNTERCLAIM**

Fed. R. Civ. P. 16(f) states that if a party's attorney "fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others

any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Fed. R. Civ. P. 16(f);
*see* Johnson, 975 F.2d at 607 (holding the district court is given broad discretion in
this area, and its decision regarding the preclusive effect of a pretrial order will not
be disturbed unless it evidences a clear abuse of discretion). Orders relating to the
Court's management of its calendar are reviewed for "abuse of discretion."
Navellier v. Sletten, 262 F.3d 923, 941 (9th Cir. 2001).

　　Fed. R. Civ. P. 37 authorizes the Court to issue "[a]n order striking out
pleadings . . . or dismissing the action." Fed. R. Civ. P. 37(b)(2)(C). Furthermore,
Fed. R. Civ. P. 41(b) states that the Court may dismiss a pleading, "for failure of
the [Third-Party Defendant] . . . to comply with these rules or any order of court."
Fed. R. Civ. P. 41(b). "Unless the court in its order for dismissal otherwise
specifies, a dismissal . . . operates as an adjudication upon the merits." Fed. R.
Civ. P. 41(b). Rule 41(c) extends Rule 41(b) dismissals to any third-party claim.
Fed. R. Civ. P. 41(c).

　　Keomalu violated the Court's Scheduling Order by asserting a counterclaim
against HFCU without moving the Court to modify the Scheduling Order.
Keomalu also failed to seek leave to amend his answer to CUMIS' Third-Party
Complaint. Accordingly, the Court should strike and/or dismiss Keomalu's
counterclaim against HFCU.

## C.   KEOMALU CANNOT SATISFY THE GOOD CAUSE STANDARD

Keomalu cannot satisfy the "good cause" standard that applies to the issue whether the Scheduling Order should be amended.  Zirkovic v. Southern Calif. Edison Co., 302 F.3d 1080, 1087-88 (9th Cir. 2002); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000)(under Rule 16(b), a party must show good cause for not having amended its complaint before the time specified in the scheduling order expired); Johnson, 975 F.2d at 607-608, 610 ("Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15."); see also S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A., 315 F.3d 533, 535-36, n.1 (5th Cir. 2003)(agreeing with the First, Second, Eighth, Ninth and Eleventh Circuits that Rule 16(b) trumps Rule 15(a) when a motion to amend comes after the deadline set forth in a scheduling order).

"A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under . . . Rule 15." Johnson, 975 F.2d at 609 (emphasis supplied).  Accordingly, Rule 16's much stricter "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." Id.; Coleman, 232 F.3d at 1296 ("Generally [Rule 15(a)] liberally allows for amendments to pleadings.  In this case, however, the district court found that it should address the issue under [Rule 16] because it had filed a pretrial scheduling order that

8

established a timetable for amending the pleadings, and the deadline had expired."); *see also* S&W Enters., L.L.C., NA, 315 F.3d 533, 535 (5th Cir. 2003); 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990).

"Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson, 975 F.2d at 609. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking the modification." Id.

Keomalu cannot demonstrate diligence in complying with the Court's Scheduling Order. The claims contained in Keaomalu's counterclaim filed against HFCU on October 28, 2005, are identical to those Keomalu asserted against HFCU in the complaint filed in the Circuit Court of the First Circuit, State of Hawai'i on April 21, 2004. Decl. of Counsel ¶¶2-5.

Keomalu was aware such claims existed and can offer no reasonable explanation for failing to seek leave to assert them prior to August 10, 2005, the deadline set by the Court for the filing of non-dispositive motions. Doe v. State of Hawai`i, 351 F.Supp.2d 998, 1009 (D.Haw. 2004).

Doe v. State of Hawai`i, 351 F.Supp.2d 998 (D.Haw. 2004) is apposite to the instant case. In Doe, Plaintiffs attempted to raise new claims in a motion for partial summary judgment filed with the Court without moving the Court to amend the Scheduling Order and seeking leave of court to assert additional claims. Id. at 1009.

The Court dismissed the newly asserted claims:

> In the Johnson decision . . . the Ninth Circuit stressed the importance of the Rule 16 order, and held that its standards could not be circumvented by an appeal to those of Rule 15. . . . The Johnson court therefore applied the Rule 16 "good cause" standard to a dilatory motion to amend a complaint. . . . As discussed in Johnson, the Rule 16 good cause standard primarily considers the diligence of the party seeking amendment. . . . Plaintiffs have not filed a motion to modify the Rule 16 Scheduling Order. . . . Plaintiffs were certainly aware that the arguments and claims they asserted in their motion . . . were not pled in their First Amended Complaint, but have not provided any explanation whatsoever. The Court accordingly finds that Plaintiffs did not conduct the due diligence required to meet the good cause standard.

Id. at 1009-1010; see Johnson, 975 F.2d at 607-610.

Finally, ultimately allowing Keomalu's counterclaim to proceed will prejudice HFCU. See Johnson, 975 F.2d at 609 (stating "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion."). In Keomalu's state court action, Daniel T. Keomalu v. Hickam Federal Credit Union; et al., Civil No. 04-1-0732-04 (EEH), the parties litigated

the same claims Keomalu attempts to assert in the instant case against HFCU. Decl. of Counsel ¶¶6-10.

On December 29, 2004, the Honorable Judge Hifo granted summary judgment on Keomalu's public policy tort claim and on November 30, 2005, denied Keomalu's motion to reconsider the granting of summary judgment. Id.

A jury trial on the remaining state court claims, which included Keomalu's whistleblower claim under HRS §378-62, commenced on February 6, 2006 and ended on February 13, 2006, when the Honorable Judge Hifo issued a directed verdict in favor of HFCU and against Keomalu on the HRS §378-62 claim and another claim for defamation. Id., Exhibit "A." HFCU would be prejudiced if Keomalu were given another opportunity to litigate claims that have already been litigated in state court. Id.

Keomalu cannot demonstrate diligence in complying with the dates set by the Court. Accordingly, he cannot demonstrate "good cause" for modifying the scheduling order to permit him to seek leave to file the counterclaim, as required by Fed. R. Civ. P. 16(b), and the Court should strike and/or dismiss Keomalu's counterclaim. See Johnson, 975 F.2d at 609.

11

## IV.  **CONCLUSION**

For the foregoing reasons, HFCU asks the Honorable Court to strike and/or

dismiss Third-Party Defendant and Counterclaim Plaintiff Daniel Keomalu's

Counterclaim, filed October 28, 2005.

DATED:  Honolulu, Hawaii, _____.

TORKILDSON, KATZ, FONSECA,
MOORE & HETHERINGTON,
Attorneys at Law, A Law Corporation


_____

JEFFREY S. HARRIS
ROMAN F. AMAGUIN
Attorneys for Counterclaim Defendant
HICKAM FEDERAL CREDIT UNION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HICKAM FEDERAL CREDIT UNION,<br><br>        Plaintiff &<br>        Counterclaim Defendant,<br><br>    vs.<br><br>CUMIS INSURANCE SOCIETY, INC.,<br><br>        Defendant &<br>        Third-Party Plaintiff,<br><br>    vs.<br><br>DANIEL KEOMALU,<br><br>        Third-Party Defendant &<br>        Counterclaim Plaintiff. | CIVIL NO.  04-00511 JMS BMK<br>CIVIL NO. 05-00510 JMS BMK<br><br>DECLARATION OF COUNSEL;<br>EXHIBIT "A" |

## **DECLARATION OF COUNSEL**

I, JEFFREY S. HARRIS, do hereby declare the following under penalty of perjury:

1.    I am an attorney licensed to practice law before all courts of the State of Hawaii and am a shareholder and director with the law firm of Torkildson, Katz, Fonseca, Moore & Hetherington, counsel for record for HICAKM FEDERAL CREDIT UNION in its capacity as Counterclaim Defendant only in the above-

entitled action. I have personal knowledge of the facts stated herein and would competently testify to them if called as a witness.

2.    On October 28, 2005, Daniel Keomalu filed a "Counterclaim against Hickam Federal Credit Union."

3.    The counterclaim alleges that HFCU informed Keomalu that he would be "terminated from his position as Vice President of Loans effective June 27, 2003."

4.    The counterclaim asserts that HFCU is liable in common law for terminating Keomalu "in violation of the . . . .clear mandates of public policy" and that the termination violates Hawai'i's Whistleblower's Protection Act, HRS §378-62.

5.    Keomalu asserted the same common law public policy claim and the claim that HFCU violated Hawai'i's whistleblower statute, HRS §378-62, in a complaint filed against HFCU in the Circuit Court of the First Circuit, State of Hawai'i.

6.    On April 21, 2004, Keomalu filed that lawsuit entitled <u>Daniel T. Keomalu v. Hickam Federal Credit Union</u>; et al., Civil No. 04-1-0732-04 (EEH). I represent HFCU in the state court action.

7.    On December 29, 2004, in the state court action the Honorable Judge Hifo granted summary judgment on Keomalu's public policy tort claim and on

2

November 30, 2005, denied Keomalu's motion to reconsider the granting of summary judgment.

8.    A jury trial on the remaining state court claims, which included Keomalu's whistleblower claim under HRS §378-62 and a claim for defamation, commenced on February 6, 2006 and ended on February 13, 2006, when the Honorable Judge Hifo issued a directed verdict in favor of HFCU and against Keomalu on the HRS §378-62 claim and his claim for defamation.

9.    Thus, HFCU prevailed on all claims Keomalu asserted in his state court action.

10.    Attached as Exhibit "A" is a true and correct copy of the transcript of proceedings from February 13, 2006 in the case, <u>Daniel T. Keomalu v. Hickam Federal Credit Union</u>; et al., Civil No. 04-1-0732-04 (EEH).

I declare under penalty of law that the foregoing is true and correct.

DATED:  Honolulu, Hawaii, _____.


_____
JEFFREY S. HARRIS

3

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

DANIEL T. KEOMALU,          )
                            )
              Plaintiff,    )
                            )
        vs.                 )      CIVIL NO. 04-1-0732
                            )
HICKAM FEDERAL CREDIT       )
UNION,                      )
                            )
              Defendants. )
_____)

TRANSCRIPT

of the proceeding held on Monday, February 13, 2006, before
the Honorable Eden Elizabeth Hifo, judge presiding.

APPEARANCES

STEVEN GESHELL               Attorneys for Plaintiff
WILLIAM FENTON SINK

JEFF HARRIS                  Attorneys for Defendants
JAN MURANAKA BOIVIN

LAHELA KAMALANI-MOE
Official Court Reporter
CSR 321/RPR
First Circuit Court
State of Hawaii

EXHIBIT A


PERMISSION TO COPY DENIED, H.R.S. 606-13                    2

1    MONDAY, FEBRUARY 13, 2006                    A.M. SESSION

2                              --oOo--

3                    THE CLERK:  Calling Civil No. 04-1-0732, Daniel

4    T. Keomalu versus Hickam Federal Credit Union.

5                    Appearances.

6                    MR. GESHELL:  Good morning, Your Honor.  Steven

7    Geshell and Willie Sink with Dan Keomalu for the plaintiff.

8                    THE COURT:  And Mr. Keomalu, of course, is

9    present as well.

10                    MR. HARRIS:  May it please the court, Jeff

11   Harris and Jan Muranaka Boivin for the defendants.  We have

12   Gerard Auyong and Adela Banquil.

13                    THE COURT:  Good morning to all counsel and all

14   parties.

15                    Uh, Mr. Geshell filed plaintiff's trial

16   memorandum in opposition to HRCP Rule 50 motion at eight

17   o'clock this morning which the court received and read.  Did

18   you receive it and read it as well, Mr. Harris?

19                    MR. HARRIS:  Yes, Your Honor.

20                    THE COURT:  And defendants filed a supplemental

21   memorandum in support of its Rule 50 motion.  I think a

22   two-page memo.  I don't know the time it was filed, but I

23   did receive it and read it.  Did you -- oh, the time it was

24   filed is --

25                    MR. GESHELL:  8:38.

PERMISSION TO COPY DENIED, H.R.S. 606-13                    3

1              THE COURT:  That it wasn't filed.  At least not

2      my copy.  But in any event I have it.

3              And did you receive it and read it as well, Mr.

4      Geshell?

5              MR. GESHELL:  Yes, Your Honor.

6              THE COURT:  Okay.

7              MR. HARRIS:  Your Honor, can I clarify on the

8      filing matter?  It was submitted to the chambers at the time

9      that the other motion in limine was submitted for a hearing

10     date.  And the messenger must have left you an unfiled

11     marked copy.  But it was -- it was filed at 8:38, and it was

12     provided to plaintiff's counsel before that time.

13             THE COURT:  You agree, Mr. Geshell?

14             MR. GESHELL:  Yes.

15             THE COURT:  Very well.

16             Then when we left off, the court had given you

17     until today to file this memo, appreciate that you've done

18     so, and you may now have your continued argument both on the

19     whistle blower and the defamation.

20             MR. GESHELL:  First off, Your Honor, I apologize

21     for being so, uh, I guess you'd call it -- I didn't

22     understand exactly what you were focusing on, so I

23     appreciate the opportunity to clarify the position on the

24     statutory underlying violations of statutes that were the

25     subject of the reporting; although, uh, I'm sure that Dan

1    Keomalu didn't know exactly what statute he was claiming

2    that the employer was violating at the time and quite

3    frankly, uh, probably plaintiff's counsel didn't either

4    until we get into this case more in-depth.

5              Anyway those statutes deal with the concept

6    which is what was the principle here and that is that --

7    that, uh, he was intending to report to his employer that

8    unsafe and unsound practices were occurring which was going

9    to lead to detrimental conduct or, uh, events to Hickam

10   Federal Credit Union which in turn ended up being

11   detrimental to the plaintiff himself because he reported

12   that.

13             So what are the violations of the safety and

14   soundness policy that's in both the federal scheme, to use

15   Mr. Kwock's terminology, and in the State statutes?  And

16   that is what we started out saying, whether it's unsafe and

17   unsound to do, what was happening there, and that is listed

18   what I consider to be the areas of conduct that were unsafe

19   and unsound and that is the extreme volume of these dealer

20   loans overwhelms the company leading to economic problems.

21             As was said in Exhibit A-59 by Ross, Mr. Auyong,

22   "We didn't plan it."

23             THE COURT:  So it's clear that's the memo dated

24   May 6, 2002 in evidence?

25             MR. GESHELL:  Right.  We bungled that letter,

1      Your Honor, for a shorthand term in which he says I think on

2      the last page "We didn't plan it well.  We didn't operate it

3      well."  Let me get the actual language, Your Honor.

4                   He says on the last page --

5                   THE COURT:  That's Bates 087.

6                   MR. GESHELL:  Correct.  I don't need to read it

7      to the court.  I mean it's --

8                   THE COURT:  Oh, please do.

9                   MR. GESHELL:  -- on the record.

10                  "As I had indicated previously, it's my feeling

11     that we didn't plan the operation properly, haven't managed

12     it properly, and don't really know what we have in our

13     portfolio.  In essence we bungled it.  So now it's time to

14     grab control of our program -- of the program as long as we

15     believe we should continue to make auto dealer loans part

16     and parcel our business."  So that's an admission that they

17     didn't plan it, manage it, or operate it.  So he reported

18     that.

19                  Now instead of doing what Dan said, to slow down

20     and collect, they chose to charge off those loans that

21     they've considered to be uncollectible or nonperforming.

22     And so instead of doing what Dan said, collect on them, and

23     also apply all the credits that are due before you charge

24     them off, the policy was, by Mr. Auyong on behalf of Hickam,

25     to charge them off.  And that was to enable the company to

1    bury those files because when that happens, they're gone.

2    They don't really constitute any current liability for the

3    company, and they're not a performing loan.  They're not an

4    income producer.  They're nothing.

5            And so not only that, but that results in them

6    being hidden from view by the examiners.  So that's what

7    happened.  And those -- all of those -- that conduct is in

8    evidence to establish the elements of the Whistle Blower Act

9    that he was reporting or about to report to his employer a

10    violation or a suspected violation of those statutes which

11    are cited in the memo filed this morning at zero eight

12    hundred hours.

13            Now I trust that that is sufficient to establish

14    that the motion, the Rule 50 motion for judgment as a matter

15    of law, must be denied.  Moreover, this court had basically

16    the same evidence in the, uh, report in motion for summary

17    judgment and determined that there were genuine issues of

18    material fact earlier in this case.  And, therefore, I don't

19    know what has really changed.  So, uh, if reasonable minds

20    can differ, it's for our trier of fact.  So the motion must

21    be denied.

22            Now the other thing that was asserted, according

23    to my notes -- maybe I was so tired Friday I didn't write

24    them down right 'cause I know I sure didn't anticipate

25    arguing the motion at that time, but I got done with the

1    evidence a lot faster than I anticipated.  Uh, I think the

2    defense was arguing that they have an absolute defense

3    because there was a gradual adverse action.  Now that's a

4    matter of defense.  That, uh, is not part of the plaintiff's

5    case-in-chief.  So that's for the defendant to prove.

6         I don't believe that the evidence here shows

7    that there was a gradual action if that is in fact a defense

8    and a reason to grant a Rule 50 motion.  What happened here

9    is I'm sure the court is well aware that, uh, in October,

10   2002 it became apparent that things weren't going well for

11   the credit union.  They had all these dealer loans that were

12   turning sour and going back into the May 6 letter, Exhibit

13   A59 when Mr. Auyong took over the project.  So he could see

14   the writing on the wall.

15        Then Rex Johnson enters the picture and says you

16   really got a mess here.  So what are you going to do about

17   it.  So in the eyes of the board he's got to take some

18   action, and so they point the finger at Dan.  He's the man

19   that caused all this.  And the, uh, special audit, so-called

20   "special audit" and the December 31st audit by Mr. Kwock

21   already pointed the finger at him.  Then they file a bond

22   claim.

23        That's not -- that's not delayed, gradual,

24   adverse action.  That's within two months -- let's see,

25   three months of when he was placed on administrative leave

1    under the false premise that, oh, we want you out of here so

2    we can go and do what we want to do to get our information

3    straight objectively.  But in reality they wanted him out of

4    there so they could take care doing exactly what they wanted

5    to do and that was get rid of Dan and blame him for the

6    loss, file a bond claim.

7              I think the last one went up to, uh -- the

8    latest, not the -- I mean the one in evidence I think is

9    over a million dollars.  And the evidence was that they

10   loaned -- they had $22 million in liquidity that came due I

11   think it was in, let's see, '01.  So they loaned that out.

12   They were told to loan that out.

13             Mr. Auyong says loan all that out.  Put it out

14   in those dealer loans.  Let's get some income here.  We

15   got -- we got projects.  We got to build some new, uh,

16   centers.  We got to build some new offices over there in

17   different places.

18             So we're -- he -- he was built on building an

19   empire.  And he used -- needed some money to finance it.

20   Where do you get it?  Dealer loans.  Simple as that.  So

21   when it turned sour, he could see dominos were going back

22   the other way.  And he knows.  He used to be an examiner.

23   He knows when that happens then somebody's head's going to

24   roll.  Figuratively, not actually.  But I mean somebody's

25   going to get it.  And in fact that's what, uh -- that's what

1    he was trying to do was prevent him from losing his

2    position.

3                So the next item that I see on the -- my notes

4    was that there's nothing in the report that constitutes a

5    motivating or substantial factor in the termination.  Well,

6    the inference is all there.  The evidence is all there that

7    when he said he's going to go and Exhibit 1, Page 10, that

8    he's going to be happy to talk with -- tell the examiner

9    what's happened, they know that, uh, Mr. Auyong knows he's

10   got to get rid of my client, get him out of the picture.

11   And he did.  And the board -- he used the board to do it.

12                So the other basis was that the personnel

13   committee report was a business judgment decision, and that

14   -- again, that's a matter of defense.  That's not in the

15   plaintiff's case.  That -- that's a pretext.  And so we've

16   produced enough evidence that makes that, uh -- makes him

17   have a prima facie case.  Plaintiff has a prima facie case

18   of whistle blowing, and the defense is a pretext and it

19   becomes a matter for them to rebut by their defense.

20                Now on the defamation issues we have, uh --

21   Keomalu testified that those bond claims accusing him of

22   violating company policies in making loans beyond policy are

23   false, that the combination loans did not violate company

24   policy, and, uh, there's no dispute at that -- uh, by that,

25   uh -- at this point by the defense 'cause he -- they haven't

1    put on their case yet.  So the reports were communicated to

2    the -- I mean the bond claims were communicated to the

3    bonding company, and you can see that from Exhibits I think

4    it's 60A -- capital A60-A and 61 are letters that Gerard

5    Auyong wrote to the bonding company about the bonds already

6    being filed with them or submitted.

7         So it was communicated to a third-party, so you

8    have publication.  Those publications were false accusations

9    of misconduct injuring him and his reputation by falsely

10   accusing him of being incompetent and not performing his

11   job.  So that falls within the -- within the defamation per

12   se, libel per se, and, uh, damages are presumed.  So we've

13   made the case, prima facie case on the two claims, and the

14   motion should be denied.

15        Thank you.

16        THE COURT:  Mr. Harris.

17        MR. HARRIS:  I appreciate the court taking a

18   look at our supplemental memorandum.  I really don't have

19   anything to add to that unless the court has some questions

20   on that.  Um, I -- I would like to emphasize though that

21   none of the statutes or regulations that have been -- that

22   the court has taken judicial notice of, uh, require or even

23   relate to whether or not the credit union should slow down

24   lending or whether or not the credit union should charge off

25   before or after taking insurance credits or further

1    collecting.

2          With respect to the bond claim, plaintiff did

3    testify that he knew of no other reason for Mr. Auyong

4    filing the bond claim other than Mr. Kwock's report, and I

5    respectfully submit on both those grounds a Rule 50 judgment

6    as a matter of law would be justified.

7          THE COURT:  Rebuttal?

8          MR. GESHELL:  I forgot to point out to you that

9    in the -- in the exhibits in which -- I think it's A34-A,

10   the bond claim was used also as a reason for terminating the

11   plaintiff.

12         THE COURT:  Uh, I have A34-A and --

13         MR. GESHELL:  On Page 4 down at the bottom,

14   that's got a Bates stamp 262.

15         THE COURT:  I have it.

16         MR. GESHELL:  Okay.  That deals with about the

17   loss, probable loss from Dan -- due to Dan's actions.  So

18   they used the bond claim as a reason also to terminate him.

19   And it was our evidence that the bond claim is not proper,

20   and it's totally invalid because my client was not violating

21   the company loan policies.  And he told Mr. Kwock that.

22   And, uh, so that's where reasonable minds can differ.

23         It's for the jury.  It's not -- now I want to

24   point out also something on that report that I forgot and

25   that's on Page 5.  You see where it says the loan losses, it

PERMISSION TO COPY DENIED, H.R.S. 606-13        12

1    has the little chart in the middle of the page or down

2    toward the second half of the page?

3             THE COURT:  Yes.

4             MR. GESHELL:  There are other people that were

5    having loan losses, not just Dan Keomalu.  And so it says

6    others, they had delinquent -- 55 percent of loan losses

7    were attributable to other people.  But who got the boot?

8    Who got the claim filed against them?  But Dan Keomalu, he's

9    the man to blame.  He's all at fault.  The others, they

10   didn't -- what happened to them?  Nothing.  Same thing for

11   the delinquency rate.  His rate is lower than the others,

12   but he got kicked out.

13             So, see, it's a pretext, and therefore -- in

14   fact I'll finish the sentence.  Therefore, the motion must

15   be denied under the delinquency rate.  Uh, the third tier,

16   his delinquency rate is lower than the others.

17             THE COURT:  His alone is 40 percent.  All others

18   is 60 percent.  And the following sentences: --

19             MR. GESHELL:  Right.

20             THE COURT:  "As the most senior and experienced

21   lending officer and as a member of senior management, it

22   would be expected that Dan's performance would be better

23   than the credit union average.  Does it not say that?

24             MR. GESHELL:  That's a negative question.  I'll

25   say the positive.  It does say that, Judge.

1        THE COURT:  Okay.

2        MR. GESHELL:  I agree with what you're reading

3   into the record, but I want to point out in that regard that

4   he was the one that -- when they have a loan officer that

5   turns it down and he approved it over that, then he's going

6   to have more of those than anybody else because he, under

7   their guidelines, has the -- has the, uh, power to do that.

8        So it just so happened that, you know, that's

9   the way it was, that he -- he approved those loans.  And

10  they -- I -- I think the evidence is very clear on this

11  issue that it was clear that Dan had to go because he was

12  going to ruin Gerard Auyong's position in that dynasty that

13  he was trying to build out there with his $400 million

14  company.  And, uh, he stood at -- my client stood in his

15  way, and he had to go.  That's it.

16       THE COURT:  Okay.  Let me say at the outset --

17  I'm repeating myself -- but the record created on this issue

18  was many days ago.  On the motion for summary judgment many

19  days ago I said the denial of it, which I think was cited as

20  the law of the case regarding objections that were made by

21  the defendant and contained in the reply, that I wanted to

22  make sure everybody understood then and I want to make sure

23  you understand it now, the reply memo of defendants was not

24  delivered as a courtesy copy to the court.  The court never

25  read it.  I ruled on the motion for summary judgment on the

 1      basis of the moving papers and the opposition which included

 2      Mr. Keomalu's I think November '05 declaration.

 3              And I believe the administrative rule is that if

 4      a memo's not delivered, the court can disregard it.  But,

 5      moreover, even given the arguments I didn't detect that

 6      there had been a reply, so I didn't learn that until after I

 7      got off the bench and had ruled.  In any event, I rule on

 8      the basis of what is in evidence and the standard that

 9      applies to Rule 50 which is set forth in many cases

10      including Tabieros versus Clark Equipment Company, 85 Haw

11      336, 1997, and that is to give every reasonable inference,

12      among other aspects of the standard, to the plaintiff in

13      applying the Tabieros versus Clark Equipment Company.

14              In its completeness to the Rule 50 motion, the

15      court does not find that any reasonable jury on this record

16      could find violation of any of the laws be they federal,

17      code violations, CFRs, or the state laws that were cited

18      and/or suspected violations.  The memo argues slow down and

19      charge-offs.  There is no evidence that the charge-offs were

20      not done in compliance with GAAP.  There is no evidence that

21      the credit union was in jeopardy.  There is no evidence from

22      which a jury could determine that, nor I myself sitting

23      here, understanding what is in evidence nor do I see

24      suspected violations of any of the other laws.  And the

25      argument that the charge-offs misrepresented the financial

1    statement, Mr. Keomalu said it misrepresented it by making

2    it look worse, not better.

3              But in any event, um, as to the defamation, it

4    is undisputed that, um, there is no reason other than the

5    recommendation in the Kwock report that is ascribed Mr.

6    Auyong's conduct for filing the bond claim.  He was the

7    president.  There were losses attributed in large part to

8    Mr. Keomalu which he had a duty to try to recoup by filing

9    the bond, and it, as we said before, was for the plaintiffs

10   to prove that a reasonable person would not have acted under

11   all the circumstances as Mr. Auyong did but disagreed with

12   the defendants that it was a clear and convincing standard

13   of proof.

14              I agreed with Mr. Geshell that it's been a

15   preponderance and that they only had to show that a

16   reasonable person under the circumstances given all the --

17   that was known at the time set forth in the duty type

18   analysis of the case law is what the law is.  So it is not

19   the standard set forth in the case law that describes the

20   nonjudicial government employee which talks about clear and

21   convincing evidence.  But rather the two cases cited therein

22   that, um, the court finds Mr. Geshell properly took the

23   analysis from.

24              The motion is granted.  The trial is over.  The

25   court will inform the jury, await post-trial motions, and

1    then the defense can prepare the judgment as of now.

2                    Prepare an order.

3                    MR. HARRIS:  Your Honor, is the jury discharged?

4                    THE COURT:  Well, at ten o'clock, if they come,

5    they will be.

6                    MR. HARRIS:  Okay.

7                    (Proceeding recessed.)

8                    (Proceeding reconvened.)

9                    THE COURT:  Calling Civil No. 04-1-0732, Daniel

10   T. Keomalu versus Hickam Federal Credit Union and Gerard

11   Auyong.

12                   Appearances.

13                   MR. SINK:  Willie Sink and Steve Geshell on

14   behalf of Mr. Keomalu.  He's not here.

15                   MR. HARRIS:  May it please the court, members of

16   the jury, Jeff Harris and Jan Muranaka Boivin on behalf of

17   the defendants who are also absent.

18                   THE COURT:  Good morning to all of you and

19   especially good morning to members of the jury.

20                   I'm glad that you received the message that Mr.

21   Dean Park, the law clerk, left for you not to come in 'til

22   ten o'clock and that was because late Friday after you left

23   we continued to have argument on motions that are common in

24   civil cases as this is.  And because of the nature of the

25   argument, the court continued it and allowed legal research

1    and briefing, so I didn't want you to be here at 8:30.  We

2    did receive the briefs about 8:00 o'clock this morning, and

3    then we did have further argument, and I think that ended

4    about 9:30.

5              So what happened is that the defendants brought

6    a motion for judgment as a matter of law, and the court was

7    required to and did consider the law that was applicable to

8    the both claims that remained in this case, that's the

9    Whistle Blower Act, and the defamation claim and also

10   considered that which was in evidence and found that once

11   the plaintiffs had rested their case, which they did, um,

12   that under that motion the court has to apply a specific

13   standard of law, which I did, and considered all of the law

14   including the law that was alleged to underlie the Whistle

15   Blower Act.

16             And so in short the court granted the motion for

17   judgment as a matter of law, and judgment will enter in

18   favor of the defendants.  Which means that you will be and

19   are discharged as jurors because the level of evidence did

20   not meet that which is required for you to deliberate.

21             So what I would like to do at this time, aside

22   from thanking you very much on behalf the parties and the

23   Judiciary for your time and attention and for your patience,

24   for your good efforts as jurors, uh, and also to tell you

25   that you are going to need to check out with Mr. Park and

1    that your jury service will not be required for at least the

2    next one year, but I also would like very much to meet with

3    you briefly in the jury room and then if, after that, you

4    would like to talk to the attorneys, you may certainly do

5    so.

6              So as of now the court discharges the jury, and

7    we'll be in recess while off the record.  I'll meet with you

8    to answer any questions you may have.  We are in recess.

9              (Proceeding concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Lahela Kamalani-Moe, Official Court Reporter,

Circuit Court of the First Circuit, State of Hawaii,

do hereby certify, only upon placement of my original

signature below, that the foregoing Pages 1 through 18

inclusive comprise a full, true, and correct transcript

of the proceeding held February 13, 2006, before the

Honorable Eden Elizabeth Hifo, judge presiding.

DATED:    February 15, 2006

_____

LAHELA KAMALANI-MOE, CSR 321/RPR

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HICKAM FEDERAL CREDIT
UNION,

        Plaintiff &
        Counterclaim Defendant,

    vs.

CUMIS INSURANCE SOCIETY,
INC.,

        Defendant &
        Third-Party Plaintiff,

    vs.

DANIEL KEOMALU,

        Third-Party Defendant &
        Counterclaim Plaintiff.

CIVIL NO.  04-00511 JMS BMK
CIVIL NO. 05-00510 JMS BMK

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on _____, a true and correct copy of the foregoing document was duly served upon the following individuals at either their last known address via U.S. first-class mail, postage prepaid or by electronic mail pursuant to the United States District Court, District of Hawaii CM/ECF Guide as follows:

MICHAEL R. DAVISSON, ESQ.       [via U.S. mail]
MARIA COUSINEAU, ESQ.
801 South Figueroa Street, 18th Floor
Los Angeles, CA  90017

Attorney for Defendant and Third-Party Plaintiff
CUMIS INSURANCE SOCIETY, INC.


GREGORY W. KUGLE, ESQ.       [via U.S. mail]
1001 Bishop Street
1600 Pauahi Tower
Honolulu, HI  96813

Co-Counsel for Defendant and Third-Party Plaintiff
CUMIS INSURANCE SOCIETY, INC.


R. STEVEN GESHELL, ESQ.       [via email – geshlaw@lava.net,
6600 Kalanianaole Highway, Ste. 116  geshplgl@lava.net]
Honolulu, HI  96825

Attorney for Third-Party Defendant and Counterclaim Plaintiff
DANIEL KEOMALU


DUANE R. MIYASHIRO, ESQ.    [via email – Dmiyashiro@Carlsmith.com]
American Savings Bank Tower
1001 Bishop Street, Ste. 2200
Honolulu, HI  96813

Attorney for Plaintiff
HICKAM FEDERAL CREDIT UNION

DATED:  Honolulu, Hawaii, _____.

> TORKILDSON, KATZ, FONSECA,
> MOORE & HETHERINGTON,
> Attorneys at Law, A Law Corporation
>
>
> _____
> JEFFREY S. HARRIS
> ROMAN F. AMAGUIN
> Attorneys for Counterclaim Defendant
> HICKAM FEDERAL CREDIT UNION

619418.V1